**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------x
 ADRIANA GARCIA on her own behalf

                        Plaintiff,

      -against-                                 **COMPLAINT**

NEW YORK CITY DEPARTMENT
OF EDUCATION, and RACHELLE KLAINBERG,       **JURY TRIAL**
Jointly and severally                            **DEMANDED**

                       Defendants.
--------------------------------------------------------------------------------x

      Plaintiff ADRIANA GARCIA ("Plaintiff") by and through the undersigned counsel

Mirer Mazzocchi Schalet Julien & Chickedantz PLLC, and for her Complaint against Defendant

NEW YORK CITY DEPARTMENT OF EDUCATION (hereafter "NYC DOE") alleges as

follows:

<u>**NATURE OF THE ACTION**</u>

      1.     The New York City Department of Education is a municipal entity mandated to

provide education to the city's diverse student body, without regard to race, disability, sex,

national origin and other protected characteristics. But when it comes to their own employees,

the NYC DOE has failed to meet the discrimination laws it is bound to uphold. That is, it has

discriminated against Plaintiff, an exemplary New York City public school teacher, because of

her disability, and it has subjected her to continuous and ongoing retaliation.

      2.     When Plaintiff requested an accommodation for her rheumatoid arthritis and

interstitial lung disease, in the form of limiting her job performance to a single floor facility and

providing her with dictation software—to accommodate her limited ability to climb stairs and

her difficulty with typing—the NYC DOE not only denied these requests but also proceeded to

1

retaliate against Plaintiff by issuing her disciplines, including for failing to perform those tasks precisely for which she unsuccessfully sought accommodation.

3.      Defendants' campaign of retaliation culminated in the NYC DOE's issuance of an unsatisfactory year end rating to Plaintiff in June 2015, the first in Plaintiff's eighteen (18) year tenure.

4.      This negative rating, for the year 2014-15, was the first year-end rating issued after Plaintiff requested  accommodation.

5.      Based on this negative rating and events dating back to September 2014, on June 30, 2015 Plaintiff filed a charge at the E.E.O.C. and received a determination of Probable Cause on May 10, 2016.

6.      Undeterred by the Agency's finding, Defendants continued retaliation during the 2015-2016 school year.

7.      Defendants' retaliation and failure to accommodate Plaintiff is ongoing at the time of filing the instant complaint.

## JURISDICTION AND VENUE

8.      Plaintiff's claims arise in part under 42 U.S.C. §§ 12101. This Court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. §§1331 and 1337, and has supplemental jurisdiction over Plaintiff's State and City claims pursuant to 28 U.S.C. §1367. Venue is proper in the Southern District of New York under 29 U.S.C. §1391, as the majority of events giving rise to these claims occurred within this District.


9.      On August 3, pursuant to Section 1601.25 of the E.E.O.C.'s regulations, the Commission forwarded the investigative file to the Department of Justice.

10.     Plaintiff filed a timely charge of disability discrimination, and retaliation under Americans with Disability Act, 42 U.S.C. §§ 12101 *et seq.* with the Equal Employment Opportunity Commission on June 30, 2015 and received a Notice of Right to Sue dated September 30, 2016 on October 7, 2016 (attached hereto as **Exhibit A).**

### PARTIES

11.     Plaintiff Adriana Garcia is a Hispanic female employee of the New York City Department of Education, currently employed as a full-time Guidance Counselor at P.S. M226, a District 75 school with 9 sites located in New York County, New York.[1]

12.     Since 1998 Plaintiff has been employed as a Guidance Counselor by the NYC DOE, and during her tenure she has exclusively received Satisfactory ("S") ratings until she was targeted for retaliation on the basis of her disability in June 2015 as described *infra.*

13.     Plaintiff was granted tenure after three years—the earliest time that guidance counselors are permitted to receive tenure.

14.     Plaintiff has been, and continues to be, an exemplary educator.

15.     Since late 2011 Plaintiff has had rheumatoid arthritis (hereafter "RA") an inflammatory condition that limits her in various major life activities such a walking, climbing stairs, grasping, pushing, pulling, and typing.

16.     RA is a chronic (long-term) disease that causes pain, stiffness, swelling and limited motion and function of many joints. While RA can affect any joint, the small joints in the

---

[1] P.S. M226's sites consist of the following: the Manhattan School located at 12 W. 12th Street, New York, New York; P380 located at 508 W. 153rd Street, New York, New York; Old Stuyvesant High School located at 345 E. 15th Street, New York, New York; Millennium High School located at 75 Broad Street, New York, New York; Pace University located at 163 Williams Street, New York, New York; P76 located at 220 W. 121st Street, New York, New York; JREC located at 317 E. 67th Street, New York, New York; P208 located at 21 W. 111th Street, New York, New York; and Goodwill located at 2198 Fifth Avenue, New York, New York.

hands and feet tend to be involved most often. Inflammation sometimes can affect organs as well, for instance, the eyes or lungs.

17.     Since March 2012 Plaintiff has had interstitial lung disease that limits her in the major life activities of breathing, resulting in shortness of breath and fatigue in certain environments and while performing certain tasks.

18.     Accordingly, Plaintiff is a person with a disability recognized by applicable federal, state and city law.

19.     Plaintiff is able to perform the essential duties of her job as a Guidance Counselor with reasonable accommodation, by utilizing voice assisted typing software to accommodate joint problems affecting her hands and by avoidance of stair-climbing, which exacerbates her breathing difficulty and fatigue.

20.     Defendant New York City Department of Education is a department of the government of New York City.

21.     Defendant NYC DOE is the largest school district in the US, serving 1.1 million students in over 1,800 schools.

22.     Defendant NYC DOE is an employer within the meaning of 42 U.S.C. §§ 12101,  N.Y. Exec. Law §§290.

23.     Upon information and belief Defendant Rachelle Klainberg (hereafter is "Defendant Klainberg" or "Principal Klainberg") is a resident of King County in the State of New York.

24.     From in or about September 2011 to in or about June 2016 Defendant Klainberg was the principal of P.S. M226.

25.     As discussed below, in her position as principal Defendant Klainberg has personally discriminated and retaliated against Plaintiff by, in bad faith, or without a reasonable basis, denying Plaintiff reasonable accommodation, failing to engage in interactive dialogue and otherwise taking adverse actions against Plaintiff in order to chill Plaintiff's requests for accommodation.

## BACKGROUND FACTS

### School Years 2011-12 and 2012-13: Plaintiff's Disability and Medical Leave

26.     On December 21, 2011, Plaintiff was diagnosed with rheumatoid arthritis ("RA") and on March 2, 2012 Plaintiff was diagnosed with RA-associated interstitial lung disease (jointly "Plaintiff's disability").

27.     As a result of Plaintiff's disability, she has had a difficult time moving up and down stairs, and typing on computer keyboards.  In addition, and also as a result of her disability, from time to time she experiences "flare-ups" that cause her debilitating pain requiring short durations of bedrest.

28.     Plaintiff informed Defendant Klainberg of her diagnosis of RA in a meeting with her in or about late December 2011.

29.     At that time she did not request any accommodation, as none were required at that time, and she completed the school year without incident, receiving an S rating.

30.     In late 2012 Plaintiff's condition worsened causing her to require medical leave.

31.     Between February 2013 and August 2013, Plaintiff took a NYC DOE-approved six-month paid medical sabbatical.

32.     At the end of the year Plaintiff received a year end S rating as she had in all previous years of your tenure.

**School Year 2013-2014: Plaintiff's Extension Of Medical Leave And Principal Klainberg's Pattern Of Misrepresentation And Repeated Attempts To Remove Plaintiff From Her Position**

33.     At the end of Plaintiff's leave in August 2013, Plaintiff still had not fully recovered. Scoring very low on a lung function test, Plaintiff extended her leave for another six months (with the NYC DOE's approval) in the form of an unpaid leave of absence for restoration of health ending in February 2014.

34.     On or about September 3, 2013, the day before the first day of school, Plaintiff notified Defendant Klainberg that she was not medically able to return to work and would be seeking an extension of the medical sabbatical by email. These papers were submitted in full on September 5, 2013.

35.     Defendant Klainberg was rankled by the extension of Plaintiff's leave into the 2013-2014 school year and thereafter sought to remove Plaintiff because of her disability.

36.     Specifically, the NYC DOE has demonstrated a desire to remove Plaintiff from her role as guidance counselor since December 2013, when Defendant Klainberg provided misinformation to a counseling supervisor accusing Plaintiff of failing to advise the school of her decision to remain on unpaid leave between August, 2013 and February, 2013.  However, as Plaintiff had applied for the unpaid leave directly to H.R., Defendant Klainberg was required to retract the accusation.

37.     On   January,   2014,   Defendant   Klainberg   again   provided   H.R.   with misinformation, advising them that Plaintiff planned to remain on unpaid leave through June, 2013.  But Plaintiff quickly advised all parties that she intended to return in February 2014.

**Plaintiff's Return To M.S.226**

38.     In early February 2013, Plaintiff returned to school as Guidance Counselor.

6

39.     In or about the first week of February, 2013, Plaintiff called District 75 in order to make a formal accommodation request to the NYC DOE, and spoke with  NYC DOE agent Lorraine Kransdorf (hereafter "Ms. Kransdorf"), who assigned teacher placement in coordination with Defendant Klainberg.

40.     Specifically, as travelling up and down the stairs severely exacerbated her condition, Plaintiff informed Ms. Kransdorf that sought as an accommodation, assignment to P.S. 208, one of P.S. M226's buildings to which Plaintiff had been previously assigned that has few staircases where one can conduct all guidance counseling sessions on the same floor.

41.     In her telephone conversation with Ms. Kransdorf, Plaintiff also noted that a position would be available within the week at P.S. 208, as Plaintiff was aware that a guidance counselor then assigned there was scheduled to begin maternity leave.

42.     However, Ms. Kransdorf advised Plaintiff to proceed cautiously with her request for accommodation as in her experience, the NYC DOE sought to terminate persons with disability seeking accommodation as "incapable."

43.     That is, Plaintiff was advised that accommodation requests were used as pretext to seek to terminate the employment of disabled teachers, even when they were qualified to perform their job duties with accommodation.

44.     Based on this advice, Plaintiff did not seek any accommodation in 2013-2014. Plaintiff continued to perform her job without accommodation going up and down stairs, to her office on the fourth floor, but she was very fatigued when she returned home and found her condition worsening.

45.     As long as Plaintiff did not make accommodation requests her job performance received Satisfactory ratings.

46.     In June 2014 Plaintiff received a Satisfactory year end rating for 2013-14.

## FACTUAL ALLEGATIONS

### Denied September 3, 2014 Accommodation Request And Subsequent Retaliation

47.     In August 2014 Plaintiff experienced RA flare ups and suffered from  limited mobility due to exacerbation of her disability.

48.     Plaintiff decided she could no longer delay making a request for accommodation and on September 3, 2014, Plaintiff met with the Defendant Klainberg and requested accommodation.

49.     Plaintiff made this request pursuant to the "informal procedure" set forth in the NYC DOE's Personnel Memorandum 4 which provides for "individual review" of requests made directly to a supervisor, though an informal process, and empowers supervisors such as principals to reasonable accommodate staff without need of further authorization from the NYC DOE.

50.     Specifically Plaintiff requested to be reassigned from one school in P.S.380 where she would be required to perform work on several floors, and instead placed at a single floor campus, P.S. 208, where many of her former students would be placed, to accommodate her limited ability to use stairs.

51.     The Assistant Principal was present when this conversation occurred.

52.     Plaintiff had previously taught at P.S. 208 for ten years and P.S. 380 for four years and both facilities were within the P.S. 226 system.

53.     Plaintiff also stated that P.S. 208 was a welcome accommodation from P.S. 380 as various fans were broken at P.S. 380 which exacerbated Plaintiff's lung condition.

8

54.     Plaintiff stated that it was going to be very difficult for her to go up and  down the stairs and that she feared it would exacerbate her condition.

55.     Nonetheless, Defendant Klainberg instructed Plaintiff to report to at P.S. 380 for two days per week and  to Stuyvesant High School for three days a week. At P.S. 380 Plaintiff was required to climb and descend four stories several times a day. Stuyvesant High School has several stair that guidance counselors are required to walk up and down when escorting students.[2]

56.     On Friday, September 5, 2014, Defendant Klainberg informed Plaintiff via email that her informal accommodation request to be assigned at P.S. 208 was denied.

57.     At no time did Defendant Klainberg engage in an interactive dialogue about Plaintiff's request or propose an alternate accommodation she deemed reasonable.

58.     Moreover Defendant Klainberg immediately began to retaliate against Plaintiff by subjecting her to different work rules  and discipline than those of her colleagues.

59.     Specifically on September 4, 2014, when Plaintiff was injured in a line of duty accident, and Defendant Klainberg denied the line of duty (hereafter "LOD") request.  The bad faith and retaliatory nature of this denial is apparent from the fact that the superintendent subsequently approved Plaintiff's request based on the *very same documentation* provided to the principal.

60.     As a result of Plaintiff's working without accommodation, her condition was exacerbated. That is, her RA was exacerbated by the requirement that she climb stairs against explicit doctor's orders to the contrary. This resulted in, *inter alia,* her ankle injury worsening.

61.     Such injury was only one manifestation of the exacerbation of Plaintiff's

---

[2] Although Old Stuyvesant has an elevator that faculty and staff are permitted to use, according to the school handbook, faculty and staff are not permitted to use the elevator when escorting students around the building.

debilitating RA caused by stair climbing occasioned by her post at P.S. 380 and Stuyvesant High School.

62.    Meanwhile, Defendant Klainberg continued to subject Plaintiff to retaliatory disparate work rules by calling Plaintiff in for a December 1 disciplinary meeting.

## Denied December 1, 2014 Accommodation Request And Subsequent Retaliation and FMLA Violation

63.    On December 1, 2014, Plaintiff was called into a disciplinary meeting at approximately 1:30 p.m. with Ms. Hoff, the district counseling supervisor, at which her UFT representative Rosemary Thompson was also present.

64.    Plaintiff understood that she was being targeted for retaliation and inasmuch as performance issues raised  were credible, the issues stemmed from Defendants' failure to accommodate Plaintiff.

65.    Given the relevance of her denied accommodation requests to the grounds  of the discipline, Plaintiff renewed her request for accommodation, making two additional requests by email on December 1, 2014 directly to the principal as follows:

   a.  Limited escort service at P380;
   b.  Use of the elevator with students at Old Stuyvesant High School;
   c.  Voice activated typing program in order to adequately keep and maintain timely type-written records.

66.    At the meeting Plaintiff was rebuffed and told her accommodation request could not be discussed at that time.

67.    On December 4, 2015, Plaintiff provided a letter from her rheumatologist to substantiate her three accommodation requests stating her condition "limits her facility at computer typing and mouse use over extended periods of time. The ankle limitation and exertion

dyspnea limit her capacity for stairs." Further the doctor's note noted the exacerbation of her wrist condition from the LODI and stated that "her functional capacity would be vastly expedited by a voice activated typing system." He further recommended that Plaintiff be "allowed elevator use and for given [sic] requirement of stair escort activity."

68. On December 12, 2014, Defendant Klainberg denied all three of Plaintiff's accommodation requests, without an interactive dialogue process.

69. Plaintiff's condition continued to be exacerbated by the stair climbing and she was required to wear a boot on her foot, her ankle had become inflamed to such a degree.

70. Despite Plaintiff's visible deterioration Defendant Klainberg provided no interim relief whatsoever, nor the simple accommodations requested.

71. Further in retaliation the Principal required Plaintiff to seek formal NYC DOE accommodation and thus unreasonably denied Plaintiff to the informal process to which Plaintiff was entitled.

72. On or about January 26, Defendant Klainberg began to subject Plaintiff to further retaliatory and unwarranted discipline, papering Plaintiff's file by issuing three disciplinary letters.

73. On February 4, 2015, Plaintiff was misinformed by Payroll Secretary Angela Nahas that Plaintiff could not use FMLA leave for absences due to pleurisy flare-ups caused by her disability. The reason Plaintiff was given was that because flare-ups are sudden, intermittent FMLA cannot be used for that, as it only applies to pre-scheduled absences.

74. Upon information and belief Plaintiff received this misinformation deliberately and at the direction of Defendant Klainberg as retaliation.

75.    On March 2, 2015, Plaintiff had pleurisy and between March 2, 2015 and March 20, 2015, Plaintiff took an unpaid leave of absence for restoration of health.  When Plaintiff notified the administration of her school about this on March 2, 2015, Defendant again sought to subject Plaintiff to retaliatory discipline.

76.    Specifically, Ms. Hoff admonished Plaintiff for violating her obligation to promptly and efficiently provide written progress notes and IEP updates to parents. However, Plaintiff had already written the progress notes and IEP updates to parents, which were time-stamped on March 2, 2015.

77.    When Plaintiff emailed Defendant Klainberg and Ms. Hoff to advise them that she was returning, she again requested an interactive dialogue regarding how her disability could be accommodated, further noting the need for voice assisted typing software.

78.    Upon her return, on Monday, March 23, 2015, despite being told FMLA did not cover her disability, Plaintiff submitted FLMA paperwork, which indicated that due to episodic flare-ups, Plaintiff could be out one to four days at a time.  Plaintiff also emailed Defendant Klainberg and Ms. Hoff a detailed update of her disability, including her doctors' confidence that Plaintiff could continue working with the appropriate reasonable accommodations, and an update on the tasks Plaintiff was working on and how Plaintiff was complying with the administration's directives.

**April 15, 2015 Formal Accommodation Request And Defendants' Increased Campaign of Retaliation, Pretextual Discipline and U Rating**

79.    On April 15, 2015, the UFT made a formal accommodation request to Defendant NYC DOE requesting the three accommodations previously requested at the December 1st meeting.

80. Defendant Klainberg was aware of the request at the time it was made.

81. On April 21, Plaintiff submitted a UFT Safety Complaint regarding threatening behavior by a student toward staff member to Defendant Klainberg.

82. Plaintiff received no response to such Complaint from Defendant Klainberg.

83. After making these requests, the retaliation was swift and on May 8, 2015, Defendants' most aggressive retaliation campaign began (hereafter the "Retaliatory May Disciplines").

84. On May 8, Plaintiff was publicly served in P.S. 380's main office with three separate disciplinary letters from the Defendant Klainberg for alleged misconduct: *inter alia,* fspeaking Spanish to a Spanish-speaking employee and failing to provide adequate notice of a UFT event—which event she had in fact received advance permission to attend.

85. On May 11, 2015, Plaintiff was publicly served in P.S. 380's main office with another disciplinary letter from the Defendant Klainberg for alleged misconduct related to her inability to promptly type student records, among other pretextual reasons.

86. On May 12, 2015, Plaintiff was served with another disciplinary letter: a reissuance of the January 26, 2015 disciplinary letter.

87. On May 20, 2015, Defendant Klainberg approached Plaintiff in front of the entire staff and faculty, and very deliberately and sarcastically asked Plaintiff whether she could accommodate her with another type of chair if Plaintiff was feeling uncomfortable. Afterwards, many colleagues commented about this interaction, feeling that it was inappropriate and staged.

88. Later that day, the Defendant Klainberg emailed Plaintiff to inform her that two accommodation requests (elevator use with students and limited escort service) had been approved, while the third (voice-activated program, which incorporates computer speech to

text) was still pending, and Plaintiff would need to follow up regarding same. Plaintiff's third accommodation request was not approved until November 2016.

89.    Protesting the partial denial and the needless obstacles to and retaliation for her request that she had faced, on June 2, 2015, Plaintiff filed a step 1 grievances with the UFT for, among other things, violating the Americans with Disabilities Act ("ADA") by failing to make reasonable accommodations in a timely manner and retaliation.

90.    Within a week of raising a violation of the ADA Plaintiff was again targeted for unwarranted disciplined.

91.    On June 9, 2015, Plaintiff was served with another disciplinary action summons for alleged professional misconduct on June 4, 2015 during a day of professional development ("PD").  Plaintiff was later given a disciplinary letter informing her that Plaintiff failed to attend one hour of the all-day PD session, although Plaintiff was charged with organizing and setting-up the UFT vote and was permitted to take one hour of the PD to do so.

92.    Defendant Klainberg's issuance of the June 9 discipline was in particularly bad faith as Defendant Klainberg had witnessed Plaintiff taking the hour to set-up, yet did not reprimand her at all at that time.

93.    Furthermore, no other person conducting set-ups for various other activities that day was disciplined.

94.    On June 19, 2015, Plaintiff received a letter from the Defendant Klainberg denying all of her UFT grievances.

95.    On the heels of the denial of the grievances Defendant Klainberg issued her most stinging act of retaliation.

96.    On June 23, 2015, Plaintiff received her year-end rating: an Unsatisfactory

for the year 2014-2015. This year-end rating retaliatory in itself and was further based on the aforementioned retaliatory disciplinary actions taken against her.

97.     Plaintiff was the only full time guidance counselor to receive such rating  and she had never previously received an Unsatisfactory rating.

### Retaliatory Reassignment After E.E.O.C. Filing and Move to Terminate After Filing Internal Complaint

98.     On June   30, 2015 Plaintiff filed a charge of disability discrimination  and retaliation at the E.E.O.C. for events dating back to September 3, 2014

99.     Since filing with the E.E.O.C. Plaintiff has continued to suffer discrimination and retaliation in violation of federal, state and city law in the form of retaliatory reassignment to far flung schools for the first time in her tenure under Defendant Klainberg.

100.    In September 2015, Plaintiff returned to her previous post, and found her workload at her regular school was reduced.

101.    In part, Plaintiff's workload was assigned to a part-time guidance  counselor with less seniority.

102.    The decision to reduce Plaintiff's workload at M.S. 226 was made by  Defendant Klainberg.

103.    Further, Defendant Klainberg additionally assigned Plaintiff to an entirely new school in Brooklyn to satisfy Plaintiff's requisite workload.

104.    This retaliatory reassignment caused Plaintiff great stress and anxiety.

105.    In October 2015, Plaintiff's increased anxiety exacerbated her disability  and she became sick with complication to her lungs that required her to take a restoration of health leave from November 2015 to June 2016.

106.   On May 10, 2016   the E.E.O. C found probable cause for Plaintiff on her discrimination charge, stating:

> The Commission's investigation revealed that contrary to Respondent's position statement, Respondent didn't participate in the interactive process in good faith. Charging Party made her initial request for an accommodation on 3 September 2014; Respondent did not approve her reasonable accommodation until 27 May 2015. Once Respondent was put on notice that Charging Party required accommodation(s) Respondent was obligated to work with Charging Party to find suitable accommodation(s). [E.E.O.C. Determination letter]

107.   In September 2016, Plaintiff Klainberg was assigned to another school.

108.   Plaintiff's reasonable accommodation requests for the 2016-2017 school year are pending as of the date of this complaint.

## Plaintiff Has Been Subjected to A Retaliatory Hostile Work Environment By Defendants Since Making An Accommodation Request on September 3, 2014

109.   Since September 3, 2014, in addition to disparate and retaliatory treatment Defendants' actions described *supra* have amounted to a campaign of retaliatory harassment, and thus subjected Plaintiff to a hostile work environment.

110.   Defendants' retaliatory disciplines were so frequent, harassing, pervasive continuous and concerted as to alter the conditions of Plaintiff's working environment.

111.   Due her engaging in protected activity to receive required accommodation, Plaintiff has been targeted for harassment and has been subjected to a work environment that is objectively hostile viewed in the totality of the circumstances.

112.   Plaintiff has repeatedly been humiliated by the public discussion of her condition, the need for accommodation and the series of false disciplines that she has been subjected to which have sought to undermine and mar her professional competency.

### Emotional Distress Resulting from Discrimination and Retaliation

113.    Plaintiff has been greatly distressed by the harassment, disparate treatment, retaliation and this distress has resulted in exacerbation of her disability as well as severe emotional distress.

104.    As a result of Defendants actions, Plaintiff has had to seek additional professional help to manage the exacerbation of her condition and the independent emotional distress caused by Defendants.

105.    Further, Defendants' actions have caused Plaintiff to take unpaid leave of absences, that would not have been required in the absence of Defendants' discriminatory and retaliatory actions.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. §§ 12101 AGAINST DEFENDANT NYC DOE

114.    Plaintiffs repeat and re-allege 1 – 121 as though fully set forth herein.

115.    Defendant is an employer covered by the ADA; due to her RA and related interstitial lung disease Plaintiff is a person with a disability within the meaning of the ADA; Plaintiff is qualified to perform the job-essential functions with or without reasonable accommodations; and Plaintiff has suffered an adverse employment action owing to the employer's act or omissions.

116.    Based on those allegations Defendant NYC DOE discriminated against Plaintiff on the basis of disability by, *inter alia,* wrongfully denying Plaintiff's informal requests for accommodation, by failing to grant Plaintiff's full request for accommodation and by failing to engage in an interactive dialogue in violation of 42 U.S.C. §§ 12101 *et seq.*

117.    As a result of these actions Plaintiff has been required to take leave without pay due to exacerbation of her disability and has suffered severe humiliation, emotional  distress and

exacerbation of her condition caused by Defendants' failure to accommodate and the stress of Defendants' discrimination.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF N.Y. EXEC. LAW §§ 290, §§ 296 AGAINST DEFENDANT NYC DOE and DEFENDANT KLAINBERG

118.    Plaintiff repeats and re-alleges 1 –121 as though fully set forth herein.

119.    Plaintiff is a person with a disability within the meaning of the NYSHRL.

120.    Plaintiff is qualified to perform the job-essential functions with or without reasonable accommodations and Plaintiff has suffered the adverse employment actions described herein owing to the Defendants' act and/or omissions.

121.    Further, Defendant Klainberg was directly involved in the discrimination against Plaintiff by, in bad faith and without a reasonable basis, denying Plaintiff's reassignment of new site, denying attendance documentation and failing to engage in an interactive dialogue with Plaintiff.

122.    Further Defendant Klainberg aided and abetted Defendant NYC DOE discrimination against Plaintiff.

123.    Based on those allegations Defendant NYC DOE and Defendant Klainberg, discriminated against Plaintiff on the basis of disability, by *inter alia*, wrongfully denying Plaintiff's informal requests for accommodation, by failing to grant Plaintiff's full request for accommodation and by failing to engage in an interactive dialogue in violation of N.Y. Exec. Law §§290, §§ 296.

124. As a result of these actions Plaintiff has been required to take leave without pay due to exacerbation of her disability and has suffered severe humiliation, emotional distress and exacerbation of her condition caused by Defendants' failure to accommodate and the stress of Defendants' discrimination.

**COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107(1)(a) AGAINST DEFENDANT KLAINBERG**

125.   Plaintiff repeats and re-alleges 1 –121 as though fully set forth herein.

126.   Plaintiff is a person with a disability within the meaning of the NYCHRL.

127.   Plaintiff is qualified to perform the job-essential functions with or without reasonable accommodations; and Plaintiff has suffered the adverse employment actions described herein owing to the Defendant Klainberg's act and/or omissions.

128.   Defendant Klainberg was directly involved in the discrimination against Plaintiff by, in bad faith and without a reasonable basis,  denying reasonable accommodation and failing to engage in an interactive dialogue with Plaintiff.

129.   Based on those allegations Defendant Klainberg discriminated against Plaintiff on the basis of disability wrongfully denying Plaintiff's informal requests for accommodation, by failing to grant Plaintiff's full request for accommodation and by failing to engage in an interactive dialogue in violation of New York City Administrative Code §8-107(1)(a).

130.   As a result of these actions Plaintiff has been required to take leave without pay due to exacerbation of her disability and has suffered severe humiliation, emotional distress and exacerbation of her condition caused by Defendant Klainberg;'s  failure to accommodate and the stress of Defendant Klainberg's discrimination.

**COUNT IV: RETALIATION IN VIOLATION OF 42 U.S.C. §§ 12101 AGAINST DEFENDANT NYC DOE**

131.   Plaintiffs repeat and re-allege 1 –121 as though fully set forth herein.

132.   Defendant is an employer covered by the ADA.

133.   Due to her RA related interstitial lung disease Plaintiff is a person with a disability within the meaning of the ADA; Plaintiff engaged in activity protected by the act by making a series of requests for reasonable accommodation from September 3, 2014 to the

present; Defendant NYC DOE was aware of such requests and thereafter took the retaliatory adverse actions stated herein against Plaintiff in close temporal proximity to Plaintiff's protected activity, thus under circumstances giving rise to an inference of retaliation.

134.   These retaliatory actions included individual adverse actions such as false and pretextual disciplines, a false and pretextual 2014-2015  negative year end rating, as well as the creation of a hostile work environment since on or about September 3, 2014 to the present.

135.   Based on those allegations Defendant NYC DOE retaliated against Plaintiff in violation of 42 U.S.C. §§ 12101.

136.   As a result of these actions Plaintiff has been required to take leave without pay due to exacerbation of her disability and has suffered severe humiliation, emotional distress and exacerbation of her condition caused by Defendant's retaliatory assignments and by the stress to Plaintiff caused by Defendant's retaliation.

## COUNT V: DISABILITY DISCRIMINATION IN VIOLATION OF N.Y. EXEC. LAW §§290, 296(7) AGAINST DEFENDANT NYC DOE AND DEFENDANT KLAINBERG

137.   Plaintiff repeats and re-alleges 1 –121 as though fully set forth herein.

138.   Plaintiff is a person with a disability within the meaning of the NYSHRL.

139.   Plaintiff engaged in activity protected by the Law by making a series of requests for reasonable accommodation from September 3, 2014 to the present;  Defendant Klainberg was aware of such requests and thereafter took the retaliatory adverse actions against Plaintiff described herein in close temporal proximity to Plaintiff's protected activity, thus under circumstances giving rise to an inference of retaliation.

140. These retaliatory actions included individual adverse actions such as false and pretextual disciplines, a false and pretextual 2014-2015  negative year end rating, as well as the creation of a hostile work environment since on or about September 3, 2014 to the present (or to

June 2016 in the case of Defendant Klainberg).

141. Further, Defendant Klainberg was directly involved in the retaliation against Plaintiff by, in bad faith and without a reasonable basis, taking the above described actions.

142. Defendant Klainberg further aided and abetted Defendant NYC DOE in its retaliation.

143. Based on those allegations Defendant NYC DOE and Defendant Klainberg retaliated against Plaintiff in violation of N.Y. Exec. Law §§290, 296(7).

144. As a result of these actions Plaintiff has been required to take leave without pay due to exacerbation of her disability and has suffered severe humiliation, emotional distress and exacerbation of her condition caused by Defendants' retaliatory assignments and by the stress to Plaintiff caused by Defendants' retaliation.

## COUNT VI: RETALIATION IN VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107(7) AGAINST DEFENDANT KLAINBERG

145. Plaintiff repeats and re-alleges 1 – 121 as though fully set forth herein.

146. Plaintiff is a person with a disability within the meaning of the NYCHRL.

147. Plaintiff is qualified to perform the job-essential functions with or without reasonable accommodations; and Plaintiff has suffered the  adverse employment actions described herein owing to the Defendants act or omissions.

148. Defendant Klainberg was directly involved in the discrimination against Plaintiff by, in bad faith and without a reasonable basis, denying reasonable accommodation and failing to engage in an interactive dialogue with Plaintiff.

149. Based on those allegations Defendant Klainberg retaliated against Plaintiff in violation of New York City Administrative Code §8-107(7).

150. As a result of these actions Plaintiff has been required to take leave without pay

due to exacerbation of her disability and has suffered severe humiliation, emotional distress and exacerbation of her condition caused by Defendant's retaliatory assignments and by the stress to Plaintiff caused by Defendant Klainberg's retaliation.

## **PRAYER FOR RELIEF**

Wherefore, plaintiff requests the following relief:

a) An award of compensatory damages in an amount that would fully compensate Plaintiff, plus prejudgment interest, for the economic loss in back pay warranted for unpaid leave necessitated as a result of Defendants' action; as well as for mental anguish, emotional pain and suffering, humiliation, embarrassment, emotion distress, feelings of paranoia and distrust, depression, low self-esteem, sleep deprivation, loss of enjoyment of life and interference with life's daily activities as well as continued stress and anxiety caused by Defendant's violations of the law alleged in this complaint in an amount to be determined at trial;

b) Punitive damages as to the claims against non State defendants;

c) Attorney's fees and costs;

d) Such relief as is authorized by federal, state, and city law; and

e) Awarding plaintiff such other relief as the court deems just and proper.

## JURY TRIAL

Plaintiff demands a jury trial for all causes of action and claims for which she has a right to a jury trial.

Dated: New York, New York
      January 5, 2017

                    Respectfully submitted,

                    MIRER   MAZZOCCHI   SCHALET   JULIEN   &
                    CHICKEDANTZ, PLLC

                    By: RIA JULIEN
                    *Attorney for Plaintiff*
                    150 Broadway, 12th floor
                    New York, NY 10038
                    (212) 231-2235
                    rjulien@mmsjlaw.com